Kurt D. Olender, Esq. (KO-5818)
Howard A. Matalon, Esq. (HM-5503)
OlenderFeldman LLP
2840 Morris Avenue
Union, New Jersey 07083
(908) 964-2485
Attorneys for Plaintiff
Vascular Investments, LLC

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VASCULAR INVESTMENTS, LLC, a New Jersey limited liability company,<br><br>Plaintiff<br><br>vs.<br><br>JAMES F. McGUCKIN, VASCULAR ACCESS CENTERS, LLC, VASCULAR ACCESS CENTERS, L.P., VASCULAR ACCESS CENTER OF CHICAGO, LLC, VASCULAR ACCESS CENTER OF PITTSBURGH, LLC, and VASCULAR ACCESS CENTER OF SEATTLE, LLC,<br><br>Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Civil Action No. |

Plaintiff Vascular Investments, LLC ("Plaintiff" or "Vascular Investments"), for its Complaint against Defendants James F. McGuckin ("McGuckin"), Vascular Access Centers, LLC ("VAC LLC"), Vascular Access Centers, L.P. ("VAC L.P."), Vascular Access Center of Chicago, LLC ("VAC of Chicago"), Vascular Access Center of Pittsburgh, LLC ("VAC of Pittsburgh"), and Vascular Access Center of Seattle, LLC ("VAC of Seattle"), states as follows:

## NATURE OF THE ACTION

1. This action seeks rescission and damages for Defendants' violations of federal and state securities laws and concurrent claims of common law fraud, negligent misrepresentation, breach of contract, breach of good faith and fair dealing, and breach of fiduciary duty.

2. Defendants made a series of false and misleading statements through misrepresentations and omissions of material fact to Vascular Investments in connection with Plaintiff's investment of $300,000 in VAC of Chicago, VAC of Pittsburgh, and VAC of Seattle (collectively, the "VAC Entities"). The material misrepresentations and omissions of fact entirely tainted Plaintiff's investment in the VAC Entities.

3. The most significant of these misrepresentations and omissions concerns Defendants' failure to provide information about the financial performance of the VAC Entities that was available to them at the time that Vascular Investments made the decision to invest in these companies. This information would otherwise have permitted Vascular Investments to properly assess the value of the VAC Entities and choose not to make their investment.

4. Defendants directed Plaintiff's investments and withheld critical financial information from Vascular Investments in order to both induce its initial investment in the VAC Entities and to insure the continued use of Plaintiff's funds while concealing the deteriorating financial condition and ultimate loss of one of the VAC Entities. Defendants' wrongful conduct is directly responsible for the loss of half of the value of Plaintiff's investment.

## JURISDICTION AND VENUE

5. This action arises under Section 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act" or the "1933 Act"), 15 U.S.C. §§ 77(k), 77l a(2) and 77o, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t-1 ("Exchange Act"), Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5, and Section 20(a) of the Exchange Act.

6. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], as well as 28 U.S.C. § 1331 (federal question) and supplemental jurisdiction over the New Jersey securities law and common law.

7. This Court also has Diversity Jurisdiction over this action under 28 U.S.C. §1332(a)(1). The amount of Plaintiff's damages exceeds $75,000 and therefore exceeds the jurisdictional amount. Plaintiff is a citizen of a State different from the Defendants. Accordingly, complete diversity exists in the present case.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts and transactions constituting the violations of law herein complained of occurred within this District, and Defendants are also subject to personal jurisdiction in this District.

## THE PARTIES

9. Plaintiff Vascular Investments is a limited liability company organized and existing under the laws of the State of New Jersey, and maintains its principal place of business at 433 Central Avenue, Westfield, New Jersey 07090. Vascular Investments

was formed exclusively to act as an investment vehicle in order to obtain an interest in the VAC Entities.

10. Defendant James F. McGuckin, M.D. is the founder of a business specializing in the development of vascular care centers in the United States and conducts business through VAC LLC and VAC L.P. Upon information and belief, McGuckin manages, controls, administers and/or operates each of the defendant entities and resides in Pennsylvania, with a business address of 2929 Arch Street, Suite 620, Philadelphia PA 19104-2866.

11. Defendant Vascular Access Centers, LLC is a Pennsylvania limited liability company wholly owned and controlled by McGuckin, who is the sole member and Manager of the company. Vascular Access Centers, LLC is the General Partner of Vascular Access Centers, L.P.

12. Vascular Access Centers L.P. is a Pennsylvania Limited Partnership that owns or controls eighty percent (80%) of the VAC Entities, with its principal place of business located at 2929 Arch Street, Suite 620, Philadelphia PA 19104-2866.

13. Defendant Vascular Access Centers of Chicago, LLC, is a limited liability company organized under the State of Illinois, with a business address of 585 County Line Road, Radnor, Pennsylvania 19807.

14. Defendant Vascular Access Centers of Pittsburgh, LLC, is a limited liability company organized under the State of Pennsylvania, with a business address of 585 County Line Road, Radnor, Pennsylvania 19807.

15. Defendant Vascular Access Centers of Seattle, LLC, is a limited liability company organized under the State of Washington, with a business address of 585 County Line Road, Radnor, Pennsylvania 19807.

16. Each of the above named Defendants is jointly and severally liable for the damage sustained by Vascular Investments. By and through the direction of McGuckin, each of the Defendants had knowledge of (or recklessly disregarded) the false and misleading statements of material fact made to Vascular Investments and thereby participated in the wrongful conduct giving rise to those misrepresentations.

## FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

17. In 2005, Dr. McGuckin founded Dialysis Access Centers, now known as Vascular Access Centers (www.vascularaccesscenters.com). Vascular Access Centers partners with doctors in various locations in the United States to develop and manage medical practices specializing in vascular care.

18. In late October, 2006, VAC, L.P. solicited Dr. Clifford Sales and a group of doctors of a medical practice specializing in cardiovascular care (hereafter, the "investment group") to participate in an offering of security investment in the VAC Entities.

19. In a written Proposal dated October 18, 2006, a copy of which is attached as Exhibit A hereto, the investment group was advised that the pre-money valuation of VAC of Chicago was $4 million, whereas the pre-money valuation of VAC of Pittsburgh and VAC of Seattle was only $2 million per company. VAC L.P. informed the investment group in the Proposal that McGuckin had decided based upon these valuations that fifty percent (50%) of any investment made in the VAC Entities would be placed in

VAC of Chicago, with the remaining investment equally divided between the remaining companies. The financial statement attached to the Proposal reflected that in its first year of operation, VAC of Chicago alone would generate over $3 million in revenue. At no time did Defendants ever contradict or update their projected and anticipated financial performance of the VAC Entities contained in the statement accompanying the Proposal.

20. In the Proposal, VAC L.P. sought to entice the investment group to form a limited liability company as the vehicle for investment in the VAC Entities. VAC L.P. promised following the date of the Proposal to provide the group with access to "all information in VAC's possession and/or control or reasonably available to VAC relating to the [VAC Entities]".

21. VAC L.P. followed up on the dissemination of its Proposal by sending the investment group in October or November, 2006 a Confidential Offering Memorandum (hereafter, "2006 PPM") dated August 8, 2006 (hereafter, the "2006 PPM"), which purported to explain the nature of the VAC Entities.

22. Through the 2006 PPM, the VAC Entities, operating through McGuckin and the entities managed or controlled by him, solicited the investment group to invest in the VAC Entities in exchange for proportionate membership interest in these companies. Although the 2006 PPM was dated August 8, 2006, the date and time stamp of the document indicated that it had been updated to October 25, 2006.

23. The 2006 PPM contained a number of representations regarding the VAC Entities:

a) In the section of the 2006 PPM entitled "Risk Factors", the VAC Entities represented that they had not yet begun to operate and there was no operating history on which investors could evaluate an investment decision;

b) In the section of the PPM entitled "Use of Proceeds", the VAC Entities represented that they anticipated that the centers would become profitable within one year after opening, assuming unforeseen difficulties did not arise. Significantly, this section of the PPM went on to represent the expectation of the VAC Entities that the centers would "receive further funding from [VAC L.P.] in order to open their Centers and operate them until such time as they become cash flow positive." This section of the PPM did not state what, if any, difficulties would impact the profitability of the companies and did not qualify the statement that VAC L.P. would fund and operate these centers until profitable; and

c) That the VAC Entities will make available any and all additional information necessary to verify the accuracy of the information contained in the PPM or any other information previously furnished to perspective investors.

24. In or about December, 2006 or January, 2007, the investment group met with McGuckin regarding potential investment in the VAC Entities. At this meeting, the group inquired about additional financial information available to Defendants concerning the performance of these companies. McGuckin did not provide the group with any additional financial information. Instead, he sought to assuage them as to the value of the investment by providing assurances that the VAC Entities would perform well given his experience with how other centers had performed. In fact, McGuckin advised the group

that he expected the investment to return approximately four to five times its value over a two year period.

25. The Proposal and 2006 PPM, taken in combination with the meetings held between McGuckin and the investment group, ultimately induced the group to form Vascular Investments and to make an investment in the VAC Entities of $300,000.00 in late March, 2007.

26. Vascular Investments ultimately entered into Subscription Agreements and executed copies of the Operating Agreements of VAC of Chicago (Exhibit B attached hereto), VAC of Pittsburgh (Exhibit C attached hereto) and VAC of Seattle (Exhibit D attached hereto). In accordance with the Proposal and 2006 PPM, 50% of Plaintiff's investment was allocated to VAC of Chicago, with the other 50% divided equally between the remaining VAC Entities.

27. Unbeknownst to Vascular Investments at the time of its investment, however, statements made in the Proposal and the 2006 PPM, as well as McGuckin's statements concerning the financial viability of the VAC Entities were false and highly misleading because they contained omissions of material fact at the time these statements were made to Vascular Investments.

28. As of March, 2007, the VAC Entities had been operating for some time and McGuckin and the defendant entities managed or controlled by him had in their possession financial information concerning their performance. Nevertheless, Defendants did not provide any additional information to Vascular Investments regarding the financial performance of the VAC Entities contrary to the express representations of Defendants in the Proposal and 2006 PPM.

29. This financial information available to Defendants included details concerning the performance of VAC of Chicago, which had already begun to underperform well before Vascular Investments made its investment in the VAC Entities. McGuckin then compounded the omissions of material fact by assuring Vascular Investments through his discussions with the investment group that the centers would be highly profitable. Moreover, Defendants' statements in the 2006 PPM had convinced Plaintiff that the value of its investment was protected by the VAC Entities' representation that VAC L.P. would in any case operate and fund the companies until they no longer required outside funding.

30. Had Defendants disclosed the financial information available as to the performance of the VAC Entities, Vascular Investments would have been made aware that VAC of Chicago was falling far short of its pre-money valuation. Nevertheless, Defendants concealed this information from Vascular Investments while Plaintiff contemplated and made its decision to invest in the VAC Entities.

31. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the false or misleading statements of Defendants as pled in this Complaint. Defendants' statements alleged to be false and misleading herein all relate to then-existing facts and conditions known or recklessly disregarded by Defendants as false or misleading. In addition, to the extent certain of the false or misleading statements of Defendants may be characterized as forward looking, they were not identified as "forward-looking" statements when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

Alternatively, to the extent that the statutory safe harbor is determined to apply to any forward-looking statement pleaded herein, Defendants are liable for those statements because at the time they were made, the speaker had actual knowledge that the forward-looking statements were materially false or misleading, and/or the forward-looking statements were authorized or approved by an individual with authority to control or manage the defendant entities and who knew that the statement was false when made.

32. At the time of Plaintiff's investment in the VAC Entities, Defendants were aware that VAC of Chicago was failing as an ongoing business operation, but still remained silent as to the financial condition of this company notwithstanding the heavy allocation of membership interest placed by McGuckin in this particular enterprise.

33. Within months of Plaintiff's investment, McGuckin and the defendant entities managed or controlled by him actually made the decision to wind down the operations of VAC of Chicago and liquidate its assets and did not obtain additional funding from VAC L.P. to operate VAC of Chicago as promised in the 2006 PPM.

34. Vascular Investments was never advised of the accruing losses at VAC of Chicago or the fact that Defendants had chosen to take the dire action of actually discontinuing the business. Instead, Defendants made the decision to wind down and/or dissolve VAC of Chicago without any notice or consent by Vascular Investments, in violation of Defendants' duties and responsibilities to Plaintiff.

35. Vascular Investments only learned about the actions of McGuckin and the defendant entities he managed or controlled with respect to the discontinuation of VAC of Chicago as a result of a chance conversation in or about November 2007 with an employee of VAC L.P.

36. When confronted by Vascular Investments for an explanation of the discontinuation of VAC of Chicago, McGuckin advised Plaintiff that he had chosen to terminate the doctors working out of VAC of Chicago and to wind down the entity because the doctors operating out of that center were referring patients to other facilities. Nevertheless, Dr. McGuckin did not provide any explanation as to why he did not choose to litigate with any of these physicians or take other legal action to protect the value of the investment made by Vascular Investments and other investors of the Company.

37. To date, Vascular Investments remains without any specific information as to the circumstances which led McGuckin and the companies owned or controlled by him to wind down or dissolve VAC of Chicago. Indeed, the decision to discontinue this entity and the dissipation of its assets exceeded the scope of McGuckin's authority under the Operating Agreement of VAC of Chicago, and violated its Operating Agreement. Nevertheless, McGuckin apparently had other plans in mind with respect to the operation of vascular access centers in Chicago.

38. Immediately prior to the filing of this Complaint, Vascular Investments learned that McGuckin or those under his direction or control had formed additional limited liability companies both before and after the discontinuation of VAC of Chicago to operate vascular access centers in the Chicago area. This information was never disclosed to Vascular Investments.

39. Upon information and belief, VAC of Chicago had significant assets, including expensive medical equipment, whose ultimate disposition Defendants have yet to disclose. No accounting has been provided as to how Defendants saw fit to dispose of

these assets, where they may be located today or what Defendants did with the proceeds from the disposition of these assets.

40. The only specific information Vascular Investments has ever received concerning VAC of Chicago is that Vascular Investments lost the entirety of its investment in that company and has not been compensated for its loss.

41. In an effort to appease Vascular Investments given his unilateral decision to discontinue VAC of Chicago, and in recognition of the fact that Defendants' management and operation of the care center resulted in its total loss, McGuckin agreed to allow Vascular Investments to recover the value of its lost investment by transferring the value of its membership interest in VAC of Chicago to VAC of New Orleans, another facility managed or controlled by McGuckin.

42. In a letter dated March 28, 2008 (a true and accurate copy of which is attached hereto as Exhibit E), Vascular Investments sought to memorialize its discussions with McGuckin concerning the transfer of its investment. McGuckin did not respond to the letter and ultimately reneged on that commitment.

43. McGuckin also regarded Vascular Investment's membership interest in the remaining VAC Entities (which he declared through counsel to be nothing more than a "passive minority interest") with disdain. Indeed, in a manner similar to his management and ultimate disposition of VAC of Chicago, McGuckin acted as if he was the sole member of those companies.

44. Despite his contractual obligations to Vascular Investments under the Operating Agreements of VAC of Pittsburgh and VAC of Seattle, and coordinate common law duties, McGuckin:

- 13 -

    a)    Refused to provide Plaintiff with the names and contact information for the other investors in the VAC Entities;

    b)    Denied Plaintiff access to all of the financial information possessed by Defendants concerning the operations and performance of the VAC Entities;

    c)    Provided limited and selective disclosure of financial information through K-1 returns and excerpts from the tax returns of the VAC Entities;

    d)    Refused to hold annual meetings of the VAC Entities, branding them in a May 21, 2009 from his counsel to be nothing more than "perfunctory events"; and

    e)    Failed to produce copies of any minutes of meetings or discussions held concerning the VAC Entities.

45. Indeed, any disclosures made by McGuckin regarding the business operations of the VAC Entities only came on the heels of a demand for information from counsel for Vascular Investments, and such information was extremely limited in scope and selective in nature.

46. In May, 2009, Vascular Investments demanded rescission of their interest in the VAC Entities given the conduct described above. A true and accurate copy of Vascular Investments' May 13, 2009 demand for rescission is attached hereto as Exhibit F. McGuckin refused to permit rescission.

47. Defendants engaged in the wrongful conduct alleged herein in order to induce Vascular Investments to acquire a membership interest in the VAC Entities and to allow them to maintain the operation of the VAC entities.

48. All Defendants acted with scienter in that Defendants knew or recklessly disregarded that the representations made in the Proposal and 2006 PPM, as well as the communications that followed, were false by omission; knew (or recklessly disregarded) that such statements would be received and reviewed by Vascular Investments; knew (or recklessly disregarded) that Vascular Investments was likely to reasonably rely upon the misrepresentations of material fact; and knowingly and recklessly participated in the issuance or dissemination of such statements or documents as primary violators of federal and state securities laws. The undisclosed financial condition of VAC of Chicago was sustained, material and of a nature that evidences that the financial problems of the company existed at the time that the investment was made by Vascular Investments.

49. Vascular Investments reasonably relied upon Defendants' false representations to its detriment in deciding to invest in the VAC Entities.

### FIRST CLAIM FOR RELIEF

**(Violations of Section 12(a)(2) of the Securities Act)**

50. Plaintiff incorporates each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

51. This Count is brought for violation of Section 12(a)(2) of the Securities Act, 15 U.S.C. 771(a)(2). This specific claim is not based upon fraud.

52. As set forth more specifically above, the Proposal, 2006 PPM and communications with McGuckin failed to disclose material facts necessary to make the statements regarding the financial performance of the VAC Entities, in light of the circumstances in which they were made, not misleading.

53. By the time of the investment made in the VAC Entities pursuant to the Proposal and 2006 PPM, as well as the discussions held by McGuckin with the investment group, Defendants were aware that the financial condition of VAC Chicago was far below the pre-money valuation of VAC of Chicago represented to Plaintiff, which had also served as the basis under which Vascular Investments had allowed fifty percent (50%) of its investment capital to be placed in VAC of Chicago.

54. Vascular Investments did not know, nor could they have known, of the untruths or omissions contained in the Proposal, 2006 PPM and follow up communications with McGuckin, including that the value of VAC of Chicago was far less than had been represented to Plaintiff by Defendants. In fact, Defendants withheld from Plaintiff critical information concerning the performance of VAC of Chicago that would have played a pivotal role in its investment decision and ultimately caused Vascular Investments to refrain from making such investment in the VAC Entities.

55. Defendants were obligated to make a reasonable and diligent investigation of the aforementioned statements and communications to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading. None of the Defendants named in this Count made a reasonable investigation or possessed reasonably grounds for the belief that the statements or communications were accurate when they were disseminated to Vascular Investments.

56. As a direct and proximate result of their conduct, Defendants caused Vascular Investments to lose all of the value of its investment in VAC of Chicago, which represented half of its total investment in the VAC Entities.